UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HENRY OVIEDO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 16-cv-1883 (TSC) |
| WMATA, | ) ) ) | |
| Defendant. | ) ) ) | |

# MEMORANDUM OPINION

In this employment discrimination action filed *pro se*, Plaintiff alleges that Defendant, Washington Metropolitan Area Transit Authority ("WMATA"), unlawfully discriminated against him because of his national origin (Chilean) and age, and retaliated against him for engaging in protected activity. (Am. Compl., ECF No. 20). Following a period of discovery, Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 27). For the reasons explained below, the Court will GRANT Defendant's motion.

## I. BACKGROUND

### A. Plaintiff's Work History and Job Applications

Plaintiff worked as a Project Manager in WMATA's engineering services department from August 1999 until his retirement in April 2015, at age 80. Plaintiff alleges that he "was disappointed by the lack of promotion during [his] 16 years of uninterruptible work for WMATA and tired of the daily long walking from the

1

Eisenhower Metro Station to the office" in Alexandria, Virginia. As a result, Plaintiff "felt like" he was "forced to retire . . . at the same job classification . . . and the same grade/pay 14." (Am. Compl. ¶ 2).

Plaintiff alleges that over the course of his employment, WMATA denied him "any promotion and discriminated against [him] in the selection process in about 12 . . . engineering job[ ] positions" for which he had applied. (Am. Compl. ¶ 3). When he first applied for a position in 2003, Plaintiff "had graduate level education and a good 25 years of engineering experience, which [were] better than any of the selected candidates' qualification[s]." (*Id*.). In January 2014, Plaintiff "suffered stress and emotional pain when on or around January 31, 2014," he apparently learned that WMATA's hiring manager, Mr. John Thomas, had "refused to interview [him] to compete for promotion against other candidates for a position in the Construction Department," despite the Human Resources Department's alleged assessment of Plaintiff "as a well-qualified candidate for that engineering position." (*Id*. ¶ 4, citing Compl. Ex. 1, Thomas's Jan. 31, 2014 Memorandum re: Selection of Project Manager Interviewees). That decision, stemming from events that occurred in November 2013, forms the basis of this action.

In the fall of 2013, Plaintiff applied for two advertised project manager positions in WMATA's Office of Major Capital Projects ("MCAP"). Plaintiff's resume was among "a package" of six or seven applicants forwarded to Thomas from the Human Resources department. (June 15, 2017 Oral Dep. of John D. Thomas, P.E., at 17:17-18, 18:3, ECF No. 27-3). Thomas, who was "ultimately responsible" for hiring individuals to fill the positions, reviewed Plaintiff's resume but did not select him for an interview.

2

(*See* WMATA's Stmt. of Material Facts Not in Dispute ¶ 7; Decl. of John D. Thomas ¶ 3, ECF No. 27-1).  Thomas avers that both of the positions were "primarily to manage projects, as opposed to performing engineering tasks and functions."  (Thomas Decl. ¶ 3).  The primary function of the first position, filled by an African American man, was "to oversee the installation of canopies over escalators at Metrorail station entrances." (*Id*.).  The second position, filled by a white woman, was "financial manager for the various projects at MCAP."  (*Id*.).

Thomas avers that despite Plaintiff's "significant experience in electrical engineering tasks in another department at WMATA," he "did not feel that Mr. Oviedo was the right person for either of [the] specialized positions" since he had "concentrated primarily on electrical engineering design, which was not the focus of either" position. (Thomas Decl. ¶ 4).  Plaintiff's resume "did not indicate [his] familiarity with WMATA processes and procedures," which for Thomas was "a necessity[.]"  (*Id*.).  Thomas determined that the two individuals who were selected "had the best combination of leadership ability, breadth of experience, and technical knowledge so as to be the best candidates for the respective positions."  (*Id*.).

Plaintiff alleges that "WMATA Hiring Managers did not promote me and discriminated against me because of several factors: my age (79 years old), my strong Hispanic accent, and also as a way of retaliation" because he had "complained twice" to the Equal Employment Opportunity Commission ("EEOC") about WMATA's alleged violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Age Discrimination in Employment Act ("ADEA").  (Am. Compl. ¶ 5).  Plaintiff

also complained to WMATA's Civil Rights Office about alleged violations of the Hiring and Promotion Policy. (*Id*.).

**B. Plaintiff's EEO Activity**

Plaintiff states that he filed his first complaint with the EEOC in 2009, "followed by another similar complaint to EEOC in 2013." (Am. Compl. ¶ 10). Allegedly, each complaint raised "the same . . . argument and content, as they were all related to no promotions due to discrimination," which resulted in "a diminished salary affected by long-past discriminatory decisions." (*Id*.).

Plaintiff alleges that on June 18, 2009, and June 26, 2009, he emailed WMATA's Office of Civil Rights about his "lack of selection for the Manager of Engineering (job ref # 090035) position and was "notified" that the Office "does not investigate claims unless there is evidence of discrimination." (Am. Compl. ¶ 12(c)). In November 2009, Plaintiff filed a charge with the EEOC, claiming discrimination based on "race/national origin (Hispanic-Chilean)" and age (74). (Charge of Discrimination, ECF No. 27-7). Plaintiff checked the box for "continuing action" but listed the earliest date of discrimination as March 13, 2009, and the latest date as September 2, 2009. (*Id*.). In the "Particulars" section, Plaintiff wrote that since October 2006, he had been denied "promotion to various positions" for which he was "well qualified." (*Id*.). Plaintiff claimed specifically that on March 13, 2009, he applied for an open Manager of Engineering position (# 090035) but was not interviewed, and on September 2, 2009, he was interviewed for another Manager Engineering position (# 08064) but was not hired. (*Id*.). In each instance, Plaintiff wrote, "a younger less qualified non-Hispanic American was hired." (*Id*.) The EEOC issued its Dismissal and Notice of Rights on

4

March 15, 2011, informing Plaintiff, *inter alia*, of his right to file a lawsuit within 90 days from his receipt of the notice (ECF No. 27-8). Plaintiff did not file a lawsuit. WMATA's Facts ¶ 4.

In January 2014, Plaintiff filed a charge with the EEOC, claiming discrimination based on "race (White)," national origin (Chilean), age (78), and retaliation. (Charge of Discrimination, ECF No. 27-5). Plaintiff listed the earliest date of discrimination as January 1, 2013, and the latest date as November 18, 2013, but specifically claimed that on the latter date, WMATA failed to interview him for "the position of Project Manager." (*Id*.). Plaintiff did not check the "continuing action" box. In the Particulars section, Plaintiff wrote: "I believe I have more experience than most, if not all, of the persons who were selected for the positions." (*Id*.). The EEOC issued its Dismissal and Notice of Rights on July 14, 2016. Plaintiff timely filed this lawsuit on September 20, 2016.

In the Amended Complaint, Plaintiff lists seven engineering positions announced between October 27, 2006 and August 2011 for which he applied but was not selected. (Am. Compl. ¶ 11). Plaintiff claims generally that "supervisors and staff members" failed (1) to "provide an equal opportunity on the job competition," (2) to select "the best candidates," (3) to follow "WMATA Hiring and Promotion practices," and (4) to enforce Title VII and the ADEA. Plaintiff alleges that the interviewers allowed their "personal judgment [to prevail] over the candidate with the best qualifications. (*Id*.). Plaintiff also claims he sought "numerous times" to redress his discrimination claims with WMATA between September 2007 and June 2009. (*Id*. ¶ 12).

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249.

### III. ANALYSIS

#### A. The ADEA Claim

Defendant contends that summary judgment is warranted on Plaintiff's age discrimination claim because WMATA is immune from suit under the ADEA. The Court agrees. The Eleventh Amendment to the Constitution immunizes a State from suit in federal court, unless immunity is waived.[1] As an entity created by compact enacted by Congress and signed by the Commonwealth of Virginia, the State of Maryland and the District of Columbia, WMATA enjoys immunity from suit in federal court "to the same extent as [Virginia and Maryland] [for] its performance of governmental functions." *Jones v. Washington Metro. Area Transit Auth.*, 205 F.3d 428, 432 (D.C. Cir. 2000); *see Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 219 (D.C. Cir. 1986) ("WMATA's sovereign immunity exists because the signatories have successfully conferred their respective sovereign immunities upon it."). WMATA's "governmental function immunity" shields "the hiring . . . and supervision of WMATA personnel," *Jones*, 205 F.3d at 432 (citation and internal quotation marks omitted), which is the type of activity underlying this action. Therefore, Defendant is entitled to judgment on the ADEA claim as a matter of law.

---

[1] The Amendment provides in pertinent part: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. It is well established that this Amendment applies equally to suits brought by citizens against their own states. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Hans v. Louisiana*, 134 U.S. 1, 13-15 (1890).

**B. Title VII Claims**

Defendant contends that summary judgment is warranted on the discrimination and retaliation claims because (1) Plaintiff failed to exhaust his administrative remedies with respect to all claims, except the claim based on the November 2013 decision to not interview Plaintiff for the two Project Manager positions ("non-selection decision"); (2) WMATA has articulated legitimate, non-discriminatory reasons for not interviewing Plaintiff for those positions; and (3) Plaintiff has not established a temporal connection between his protected activity and the non-selection decision, which is a necessary element of his retaliation claim that he cannot prove at trial.

**1. Exhaustion of Administrative Remedies**

Defendant argues first that Plaintiff "cannot resurrect [his] stale claims" arising from his non-selection to positions he applied for over the course of his employment beginning in 2003 because he failed to exhaust certain claims with the EEOC and, as to others, failed to file a lawsuit after receiving the EEOC's March 12, 2011 right-to-sue notice. (Def.'s Mem. at 6). The Court agrees.

Title VII "requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), and "[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court," *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (quoting *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (alterations in original)). In the case of WMATA, "an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident." *Washington v.*

8

*Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998). Each "discrete act" of discrimination or retaliation must be exhausted "regardless of any relationship that may exist between those discrete claims and any others." *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 138 (D.D.C. 2004); *see id.* ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are individual acts that "occur" at a fixed time.") (quoting *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). And "only those acts occurring within the limitations period [are] actionable, regardless of any connection between the earlier acts and the ones" underlying "a timely complaint." *Id.* at 137. While the exhaustion requirement "should not be construed to place a heavy technical burden" on a plaintiff, it is "not a mere technicality," and a plaintiff's "Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907 (internal quotation marks omitted). To be reasonably related, the claims "must at a minimum . . . arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Payne*, 619 F.3d at 65 (D.C. Cir. 2010) (citations, internal quotation marks and alterations omitted; ellipsis in original).

Plaintiff has neither alleged nor produced evidence that he filed charges with the EEOC regarding most of the unsuccessful job applications listed in paragraph eleven of the Amended Complaint. The "Particulars" section of Plaintiff's first discrimination charge with EEOC identifies only two adverse decisions. (*See* Nov. 24, 2009 Charge). Plaintiff wrote that on March 13, 2009, he "applied for an open Manager of Engineering position (# 090035)," but was not selected for an interview; and on September 2, 2009,

9

he "interviewed for the position of Manager Engineering (# 08064)" but was not selected to fill the position. (*Id.*). In each instance, Plaintiff wrote that "a younger less qualified non-Hispanic American was hired." (*Id.*). Although Plaintiff checked the box for "continuing action," he did not complain about any actions beyond those two. (*Id.*). Regardless, it is undisputed that Plaintiff did not file suit after receiving the EEOC's March 15, 2011 Dismissal and Notice of Rights. (Def.'s Facts ¶ 4; Pl.'s Dep. at 45: 12-17). And Plaintiff has not articulated a meritorious argument for equitable tolling.[1] Therefore, the Court will grant summary judgment to WMATA on the unexhausted claims, which leaves for resolution the preserved claim based on Thomas's non-selection decision in November 2013.[2] (*See* Jan. 8, 2014 Charge of Discrimination; July 14, 2016 Dismissal and Notice of Rights).

---

[1] An employee is entitled to equitable tolling or estoppel in narrow situations where he has shown "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010) (other citation omitted)). "The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances," *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579-80 (D.C. Cir. 1998) (quotation omitted), and it does "not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

[2] Defendant argues correctly that Plaintiff "failed to preserve claims related to any alleged discriminatory acts which occurred prior to July 12, 2013," since such claims would have occurred more than 180 days before he filed the second charge on January 8, 2014. (Def.'s Mem. at 9-10). In his opposition, Plaintiff invokes the continuing violation doctrine, the discovery rule, and a "paycheck accrual" theory under the Lilly Ledbetter Fair Pay Act of 2009 ("LLA"), Pub.L No. 111-2, 123 Stat. 5. (*See* Opp'n at 3). Plaintiff posits that under the LLA, "the charge filing period resets with each pay check that reflect the pay disparity and does not expire the 180 days after the initial discriminatory pay decision was made." (*Id.*). But in rejecting an argument for reviving an unpreserved discrimination claim, the D.C. Circuit concluded that "whether to promote an employee to a higher paying position is not a 'compensation decision or other practice' within the meaning of that phrase in the LLA and [a] failure-to-promote claim is not a claim of 'discrimination in compensation.'" *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010). Thus, Defendant is correct that Plaintiff cannot rely on the

10

## 2. Title VII

Title VII's anti-discrimination provision makes it unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . . or national origin." 42 U.S.C. § 2000e-2(a). Title VII's anti-retaliation provision makes it unlawful for an employer "to discriminate against [an] employee [ ] . . . because he has opposed any practice" made unlawful by Title VII or "has made a charge, testified, assisted, or participated in" a Title VII proceeding. *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008) (quoting 42 U.S.C. § 2000e-3(a)). "Title VII's substantive provision and its anti-retaliation provision are not coterminous," and the "scope of the anti-retaliation provision" may extend "beyond workplace-related or employment-related retaliatory acts and harm[.]" *Id.* at 695-96 (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006)). Title VII claims may be proved by direct or circumstantial evidence.

---

LLA to revive his claims. (*See* Reply at 4-6). Moreover, as discussed *supra* at 8-9, Plaintiff's continuing violation theory is inapposite because an employer's failure to promote is a discrete act that requires timely exhaustion of each decision. Finally, Plaintiff's assertion that he "did not file suit after issuance of the March 15, 2011 right-to-sue letter because he reasonably did not know that he was working under a hostile environment . . . from the year 2008 to 2015" (Opp'n at 2-3) is simply untenable. By definition, a hostile work environment is one so "permeated with discriminatory intimidation, ridicule, and insult" and "sufficiently severe or pervasive" as "to alter the conditions of the victim's employment and create an abusive working environment[.]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (citation and internal quotation marks omitted). Surely, a reasonable employee subjected to such conditions for seven years would have had some awareness long before the briefing stage of a lawsuit.

### A. Direct Evidence of Discrimination

Plaintiff offers as "direct evidence" of discrimination his allegation that on "some different occasions, WMATA's managers made derogatory remarks about [my] ethnicity and my Hispanic accent[.]" (Am. Compl. ¶ 5). "Direct evidence of discriminatory intent alone is sufficient to survive summary judgment." *Robinson v. Red Coats, Inc.*, 31 F. Supp. 3d 201, 216 (D.D.C. 2014) (citing *Stone v. Landis Constr. Corp.*, 442 Fed. Appx. 568, 569 (D.C. Cir. 2011) (per curiam)). This is because "direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference*[.]" *Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 125 (D.D.C. 2014) (emphasis in original). Hence, a statement that itself shows bias in the adverse decision is direct evidence that would generally entitle a plaintiff to a jury trial. *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011); *see Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) ("A statement that itself shows . . . bias in the employment decision qualifies as direct evidence.") (citation and internal quotation marks omitted) (ellipsis in original)). "While courts have not precisely defined what constitutes direct evidence, it is clear that at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself." *Hajjar-Nejad*, 37 F. Supp. 3d at 125 (citation and internal quotation marks omitted); *see accord Ajisefinni v. KPMG LLP*, 17 F. Supp. 3d 28, 44 (D.D.C. 2014) ("In order for Plaintiff to establish discriminatory animus in an adverse employment decision . . . there must be a clear nexus between the 'stray workplace remark[ ]' and the adverse action . . . .Such a nexus can be shown if

the remark was made by an individual with the power to influence Plaintiff's termination, and the remark was temporally close in time to the [adverse determination].") (citation omitted; bracket in original)).

Plaintiff has neither identified the managers who made the alleged remarks nor produced evidence of when and in what context they were made.[3] Most importantly, Plaintiff has not attributed the remarks to Thomas, who was solely responsible for filling the relevant Project Manager positions. As a result, the Court finds that Plaintiff has produced no direct evidence of discrimination to overcome summary judgment.

### B. Indirect Evidence of Discrimination and Retaliation

In the absence of direct evidence, the court analyzes Title VII claims under the well-established burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006); *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). Under this framework, the plaintiff has the initial burden of proving a prima facie case of discrimination or retaliation, which "is not onerous."[4] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). While the plaintiff maintains the burden of persuasion at all times, *id.* at 253, the burden of proof then "shifts to the defendant 'to articulate some

---

[3] In his deposition, Plaintiff named "Mr. Moustafa Quattara" merely as someone who "gave me a lot of hard times on my work[.]" (Oviedo Dep. at 25: 21-22).

[4] "The two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). A plaintiff establishes "a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (citation omitted).

legitimate, nondiscriminatory reason for the [action in question],'" *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253). Defendant has offered such reasons; therefore, the court need only decide on summary judgment whether Plaintiff has "produced evidence sufficient for a reasonable jury to find that the employer's asserted non-discriminatory reasons were not the actual reasons and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C .Cir. 2008) (citing *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008)); *see Durant v. D.C. Gov't*, 875 F.3d 685, 699 (D.C. Cir. 2017) ("Because the Department offered a legitimate, nonretaliatory explanation for Durant's termination, we 'proceed[ ] to the ultimate issue of retaliation *vel non* instead of evaluating whether [Durant] made out a prima facie case.'") (quoting *Jones*, 557 F.3d at 678) ( alterations in original)); *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016) ("In reviewing a summary judgment motion where the defendant has proffered some legitimate reason for its adverse employment action . . ., [t]he only question that remains is whether the evidence creates a material dispute on the ultimate issue.").

Pretext may be established by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981). However, "Title VII . . . does not authorize a federal court to become a super-personnel department that reexamines an entity's business decisions," *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (citation and internal quotation marks omitted), and a court "may not 'second-guess an employer's personnel decision absent

demonstrably discriminatory motive.'" *Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Milton v. Weinberger*, 696 F. 2d 94, 100 (D.C. Cir. 1982)).

The court considers "whether a reasonable jury could infer intentional discrimination or retaliation from all the evidence, including (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)." *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (citations and internal quotation marks omitted)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff remains at all times with the plaintiff.'" *Wheeler*, 812 F.3d at 1114 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

Thomas claims that the purpose of the two positions for which Plaintiff applied "was primarily to manage projects, as opposed to performing engineering tasks and functions." (Thomas Aff. ¶ 3). And "the two persons who were ultimately selected for the two Project Manager positions . . . demonstrated to me that they had the best combination of leadership ability, breadth of experience, and technical knowledge so as to be the best candidates for the respective positions." (*Id.* ¶ 4). In contrast, Thomas testified that he "saw" in Plaintiff's resume "an extensive list of technical experiences in the electrical engineering area of Metro, both designs as well as review of submittals for electrical engineering," which, in his opinion, "was a very narrow focus of experience at Metro." (Thomas Dep. at 22:10-13). When pressed by Plaintiff about the

15

candidates' levels of experience, Thomas insisted that "it wasn't the length of the experience" but "the breadth of the experience" that formed his opinion. (*Id*. at 20: 19-20). Thomas testified that Plaintiff's "resume read about somebody who was focused on electrical engineering design and review of submittals of electrical engineering." (*Id*. at 22: 3-5). But Thomas "wasn't looking for a highly technical person for any of these positions." (*Id*. at 23:20-21-24:1). Thomas's deposition testimony is consistent with his observations in the January 31, 2014 Memorandum, which contemporaneously memorialized his decision not to interview Plaintiff. Then, as in his deposition, Thomas explained:

> Mr. Oviedo's experience at WMATA has been focused on the technical aspects of the electrical power systems for the operation of the rail system. The Project Manager position requires more than just technical knowledge of WMATA but, as noted above, knowledge of the business aspects of WMATA's policies, procedures and practices. Accordingly, I believed that Mr. Oviedo's experience was too narrowly focused to qualify for the position of Project Manager in MCAP.

(Ex. 1 to Am. Compl.). The memorandum, as well as Thomas' testimony, reflects a reasoned business decision that courts have no authority to reexamine without evidence of discriminatory or retaliatory animus, which, as discussed next, is absent from this case.

Plaintiff has produced no evidence from which a reasonable jury could infer that Thomas acted with a discriminatory or retaliatory motive, particularly where it seems that the two never met face-to-face. The record establishes that Thomas decided not to interview Plaintiff based on his review of Plaintiff's resume, which was among "a package" of six or seven applicants Thomas received from the Human Resources department. (Thomas Dep. at 17:17-18, 18:3; *see also* Thomas Aff. ¶ 4). Indeed, Plaintiff testified that "Human Resources told me you were selected for interview to

16

talk with the hiring manager and then Human Resources said the hiring manager decided not to interview me[.]" (Oveido Dep. at 25:9-14). Plaintiff has adduced no evidence, including his own testimony, from which a reasonable jury could find that Thomas knew or should have known about Plaintiff's national origin and then infer a discriminatory motive.[5] Plaintiff only surmises that Thomas is "an individual who appears he does not like Plaintiff Spanish heritage" (Opp'n at 17), but on summary judgment, "a mere unsubstantiated allegation" cannot not suffice to create a genuine issue of fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *see* Aug. 28, 2017 Order at 3, ECF No. 28 (advising Plaintiff similarly). And when, "after adequate time for discovery and upon motion [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court may properly grant summary judgment against that party. *Celotex Corp.*, 477 U.S. at 322.

Similarly, Plaintiff has adduced no testimony or documentation from which a reasonable jury could find in his favor on the retaliation claim. Plaintiff must be able to prove that "the [decision-maker] had knowledge of the employee's protected activity, and . . . the adverse personnel action took place *shortly* after that activity." *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (emphasis supplied). "Temporal proximity can indeed support an inference of causation, but only where the two events are very

---

[5] Unlike in his first charge to the EEOC, where Plaintiff identified the bases of discrimination as "Hispanic-Chilean," Plaintiff identified the bases of discrimination in the second charge as his race, "White", and his Chilean national origin (ECF No. 27-5). Since the national origin discrimination claim does not survive summary judgment, the Court will not address whether Plaintiff has raised a claim of reverse discrimination and the "higher burden" Defendant contends Plaintiff must meet to prove such a claim. (Def.'s Mem. at 13-14).

close in time." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)); *see id.* (noting that although not established as "bright-line" rule, the Supreme Court has suggested "that in some instances a three-month period . . . may . . . be too lengthy to raise an inference of causation"). Indeed, "[t]his Circuit has held . . . that when an inference of causation is premised on temporal proximity alone, even an eight to nine month gap between the protected activity and the adverse employment action is too great to establish an inference of causation." *Ajisefinni*, 17 F. Supp. 3d at 46 (citing *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (other citations omitted)).

Plaintiff has pointed to nothing in the record to show that in November 2013 Thomas was aware, actually or constructively, of Plaintiff's prior EEO activity in 2009 that concluded in 2011 with the right-sue-notice.[6] Although the gap of two years is enough to negate the causation element of the retaliation claim, *see supra*, summary judgment is warranted because "where, as here, an employer has provided a legitimate, non-retaliatory reason for its employment action, 'positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanation[ ] [is] genuine.' " *Durant*, 875 F.3d at 700 (quoting *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) (other citation omitted)). Plaintiff has produced no such evidence.

In sum, Plaintiff has produced no evidence to rebut WMATA's legitimate reasons for choosing not to interview him for the Project Manager positions announced

---

[6] The second charge in 2014 is irrelevant because, as Defendant points out, it was filed after (and as a result of) Thomas's non-selection decision. (Def.'s Mem. at 16).

18

in November 2013. As a result, WMATA is entitled to judgment as a matter of law on the preserved Title VII claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be GRANTED. A corresponding order will issue separately.

Date: March 16, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge